UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF SWIFT ENERGY COMPANY AND SWIFT ENERGY OPERATING, LLC, AS OWNER AND OPERATOR OF THE MOTOR VESSEL SEA RAIDER, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 13-5552 & 14-276<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JOSEPH C. WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF LIMITATION PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S ORDER ON LIMITATION PLAINTIFFS' MOTION TO COMPEL**

Wood Group PSN, Inc. and Corvan J. Robichaux ("Defendants") file this memorandum in support of Limitation Plaintiffs' Objection to Magistrate Judge's Order on Limitation Plaintiffs' Motion to Compel ("Objection"). Limitation Plaintiffs' Objection should be granted, and Limitation Claimants (hereinafter "Claimants") should be compelled to produce their claims files ("Claims Information") held by the Gulf Coast Claims Facility ("GCCF") and/or the Deepwater Horizon Claim Center ("DWHCC") (collectively "Claims Administrator"). Alternatively, Claimants should be ordered not to contest Defendants' subpoenas requesting Claims Information from the Claims Administrator. Claimants' Claims Information is highly relevant to the instant suit because it contains statements and representations regarding the damages to the *same property at issue here* allegedly suffered as a result of the Oil Spill by the Oil Rig

5420326_1

"Deepwater Horizon" on April 20, 2010, ("BP Spill").  In addition, nothing in any of the orders referenced by Claimants prohibits the release of Claimants' Claims Information.  Lastly, even if Claimants' Claims Information is confidential, this does not preclude relevant information from discovery.

I.      **Claimants' Claims Information Is Highly Relevant to the Instant Suit.**

Limitation Plaintiffs have sought to discover Claims Information for Claimants held by the Claims Administrator.  In response, Claimants contend that "the . . . claims process has nothing to do with the incident and damages caused by Swift on February 26, 2013."  [Rec. Doc. No. 166, § (2)(A)].  Defendants agree with both Limitation Plaintiffs and Claimants, in part.  While the Claims Information may not have anything to do with the "incident . . . on February 26, 2013," the Claims Information is wholly interrelated to the alleged "damages caused by Limitation Plaintiffs on February 26, 2013."  [Rec. Doc. No. 166, § (2)(A)].  To understand why, we provide the court with a brief and elementary summary of the life of an oyster.

Oysters are mollusks that reside on the water bottoms of the bays and sounds bordering the Gulf of Mexico here in Louisiana.  *See* Exhibit "A."  Oysters begin their lives as larvae that float through water and are barely visible to the naked eye.  *Id.*  Once settled, oysters are referred to as "spat."  *Id.*  Once oysters reach 1-3 inches in length, they are called "seed" oysters and are still too small to harvest.  *Id.*  It is not until oysters reach a length of more than 3 inches that they become "market" oysters and are suitable for harvesting and consumption.  *Id.*  This entire growth process, from spat to market, takes 2 to 3 years, as illustrated below.

5420326_1



As a result of the natural life cycle of oysters, any damages caused to live oysters, oyster beds, or oyster lease water bottoms as a result of the Oil Spill by the Oil Rig "Deepwater Horizon" on April 20, 2010, ("BP Spill") are highly relevant to the instant litigation. This is because any oysters killed, oyster beds damaged, or water bottoms damaged would have had to have been replaced and/or rehabilitated in order for live oysters to have existed on Claimants' oyster leases on February 26, 2013, and this process could take 3 years or more depending on the efforts of the Claimants. Therefore, it is probable that, if Claimants' oyster crops, oyster beds, and/or oyster lease water bottoms were destroyed as a result of the BP Spill, no oysters existed on Claimants' leases on February 26, 2013, the date of the incident that gives rise to this litigation.

While Claimants argue that "[t]he BP Settlement Agreement . . . [did] not require oyster leaseholders to provide any *evidence of physical damages* to their oyster leases," many of the claims documents completed by potential claimants required descriptions of

3

the damages sustained by the claimant.  *See* Exhibit "B."  Therefore, although recovery under the BP Settlement Agreement was not contingent on proving damages, it most certainly *required an allegation of damages* by potential claimants.  To this end, it is very likely, if not a foregone conclusion, that Claimants' Claims Information contains statements by Claimants themselves or representations by their attorneys that Claimants suffered extensive damages in their capacities as oyster leaseholders, oyster harvesters, and/or other occupations related to the oyster industry.  Claimants' admissions regarding their own damages resulting from the BP Spill *to the same resources alleged to be damaged in this suit* are most certainly relevant.  The weight of these statements, which constitute admissions against interests, is made even more substantial, and thus relevant, by virtue of the fact that they were made and entered into the record of a settlement agreement for a case pending before this court, if not filed in actual pleadings before this court.  *See* Exhibit "B."

By way of analogy, imagine that Claimants were instead members of the crew of the M/V SEA RAIDER on the day of the accident in question, and after the accident, they all alleged that they suffered back injuries as a result of the allision.  They all subsequently made claims in this very limitation action for their injuries.  It would be unreasonable for Claimants, and unprecedented for a court, to deny Limitation Plaintiffs and Defendants discovery of Claimants prior medical history and possible preexisting back injuries.  Limitation Plaintiff and Defendants here are similarly situated: Claimants' Claims Information likely contains information about damage to the oyster crops, oyster beds, and oyster lease water bottoms that Claimants allege were injured on February 26,

4

2013. The oysters and oyster beds that were arguably destroyed by the BP Spill did not magically reappear before February 26, 2013. As such, Limitation Plaintiffs and Defendants seek the production of Claimants' Claims Information.

Claimants have made statements and filed documents into the records of this Court as well as with the Claims Administrator appointed by this Court. Contained in these statements and documents, Claimants' Claims Information is relevant information regarding previous *damages to the very same property* alleged to have been damaged in this case. To refuse Limitation Plaintiffs and Defendants discovery of this information would be a miscarriage of justice and would gravely impair their ability to defend against the claims of the Claimants. For these reasons, Claimants' Claims Information held by the Claims Administrator is highly relevant to this suit and Limitation Plaintiffs' and Defendants' defense of it.

II. **Nothing in Any of Judge Barbier's Orders in the BP Spill Case Prevents the Discovery of Claimants' Claims Information.**

According to Claimants' interpretations of Judge Barbier's three orders[1] regarding the confidentiality of Claims Information, no one in the world can access Claims Information without going through Judge Barbier. While Defendants fully respect the authority of Judge Barbier to adjudicate the matters before him, including the BP Oil Spill and its resulting claims, Claimants' statements regarding the confidentiality and accessibility of Claims Information are simply not true. Contrary to Claimants'

---

[1] Pre-Trial Order No. 13, Order Protecting Confidentiality Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, (No. 2:10-mdl-02179) (Rec. Doc. 641); Order Regarding Settlement Implementation Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, (No. 2:10-mdl-02179) (Rec. Doc. 6573); Order 11 Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, (No. 2:10-mdl-02179) (Rec. Doc. 6822).

5420326_1

assertions, at least two parties can request Claims Information from the Claims Administrator: (1) the Claimants themselves or (2) third-parties via subpoena.

Claimants have notably hand-picked fewer than three full sentences to represent to this Court the rights and protections that took a sitting Federal Judge fourteen pages to enumerate. With great respect to counsel for Claimants, their summary hardly does justice to the originals. Notably, Claimants have failed to cite the language that supports their proposition that "Judge Barbier has ordered that the GCCF and DWHCC claims documents not be disclosed except by an order of the Court." [Rec. Doc. No. 166, § (2)(B)]. To the contrary, Claimants seem to have forgotten, misread, or ignored those provisions of the same three orders that grant rights to both the Claimants themselves and third-parties, via subpoena, to request Claims Information.

First, Claimants have failed to inform the Court that Claims Information has been subject to subpoena power since Judge Barbier entered his initial Order Protecting Confidentiality. Pre-Trial Order No. 13, Order Protecting Confidentiality at ¶ 8(D) Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, (No. 2:10-mdl-02179) (Rec. Doc. 641), attached as Exhibit "C." Thus, while the ability to request Claims Information was altered by subsequent orders, Claims Information has always been subject to the subpoena power of this Court, even if the Claims Information is confidential.

Second, in Judge Barbier's Order Regarding Settlement Implementation, Judge Barbier makes clear that "the Claims Administrator is authorized to release copies of Claims Information submitted by the claimant to that claimant upon the written request of

6

the claimant or the claimant's authorized representative." Order Regarding Settlement Implementation at ¶ 5 Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, (No. 2:10-mdl-02179) (Rec. Doc. 6573), attached as Exhibit "D." Thus, again Claimants have failed to acknowledge that they, or their authorized representative, can obtain their Claims Information at any time with nothing more than a written request. Surely this contemplates the case where a Claimant is compelled to make such a request by court order in other litigation.

Lastly, Judge Barbier's third and final order on the issue of confidentiality granted access to Claimants' Claims Information again to both Claimants themselves and third-parties by subpoena. Order at ¶¶ 8, 11 Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, (No. 2:10-mdl-02179) (Rec. Doc. 6822), attached as Exhibit "E." Paragraph 11 of the Order specifically identified the procedure by which Claims Information may be subpoenaed from the Claims Administrator:

> **11. Provision of Claims Information in Response to Subpoenae or Other Legal Process.** The Claims Administrator has the discretion and is permitted to provide Claims Information in response to subpoenae or other legal process received by the Claims Administrator requiring the production of Claims Information ("Legal Process"). **Upon receipt of such subpoena or other legal process, the Claims Administrator shall provide notice to the claimant (and/or the claimant's attorney, if represented), and such claimant will be provided at least seven days from receipt of such notice in which to object.** If a claimant timely objects: (1) the claimant shall take any steps necessary to obtain final resolution of the objection, and the Claims Administrator shall not produce such information until notified of a final resolution of the objection; and (2) the Claims Administrator shall not be responsible for any proceedings relating to the objection.

Emphasis added.  Thus it was fully contemplated by Judge Barbier at the time of the issuance of this latest Order that Claimants' Claims Information may become relevant to subsequent legal proceedings.  As a result, Claims Information may become subject to the subpoena power of *other courts*, and not just his own.

Claimants seem to suggest that based on the forgoing orders that neither Limitation Plaintiffs, Defendants, nor even this very Court may request, receive, and/or compel the production of Claimants' Claims Information.  This is simply untrue and is a gross mischaracterization of the extent and intent of the orders outlined above.  Not only may Claimants themselves requests their own Claims Information, but Claimants' Claims Information may be subpoenaed by Defendants under the power of this Court, or this Court may compel Claimants to produced their Claims Information.

### III. Even if Claimants' Claims Information Is Confidential, It Is Still Discoverable.

Relevant information is clearly discoverable even if it is confidential.  *Sundown Energy, L.P. v. Haller*, No. 10-4354, 2011 WL 5079329, at *4 (E.D. La. Oct. 26, 2011) (citing *Glaze v. G & B Marine, Inc.*, No. 95–1845, 1997 WL 20738 (E.D. La. Jan. 16, 1997) (Fallon, J.)).  Claimants seem to confuse confidential information with undiscoverable information.  If confidential information were precluded from discovery, medical records, tax records, and employment records would not be subject to discovery in personal injury cases.  Clearly medical records are confidential and have been afforded protections as such under federal law.  *See* Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104–191, 110 Stat. 1936 (1996).  But yet,

medical records are discoverable once a plaintiff has placed his medical condition at issue. *See, e.g.*, *Merrill v. Waffle House*, Inc., 227 F.R.D. 467, 473 (N.D. Tex. 2005) (citations omitted).

Take our claimants from our previous example, the crew members of the M/V SEA RAIDER. Surely the claimants enjoy some confidentiality in their medical records, but claimants could not also in good conscience seek to deny Limitation Plaintiffs and Defendants access to their medical records, critical evidence for evaluating their alleged personal injuries. Similarly, here Claimants are seeking compensation for damages to their oysters, oyster beds, and oyster lease water bottoms, all previously destroyed by the BP Spill, but Claimants are requesting that this Court deny Limitation Plaintiffs and Defendants access to crucial evidence that could disprove, or prove, Claimants' allegations. At the very least, if the Claims Information is not dispositive, it will certainly aid Limitation Plaintiffs and Defendants in evaluating Claimants' allegations in the very same way that prior medical records would if Claimants had suffered personal injuries.

Because Claimants' Claims Information is relevant, it is discoverable, even if confidential.

**IV.    Conclusion**

Claimants' Claims Information is highly relevant to the instant suit and the allegations by Claimants herein. This is because the Claims Information contains statements and information about alleged damages to the *same property* as a result of the BP Spill. Claimants' Claims Information is also *not* prohibited from disclosure by any order issued in the litigation associated with the BP Spill. Claims Information may be

9

requested by Claimants, subpoenaed by a third-party, or produced by Claimants under order from this Court.  Lastly, even if Claimants' Claims Information is confidential, because it is relevant, it is not protected from discovery.  For all of these reasons, this Court should grant Limitation Plaintiffs' Objection to Magistrate Judge's Order on Limitation Plaintiffs' Motion to Compel and require Claimants to produce their Claims Information or, alternatively, refrain from objecting to Defendants' subpoenas seeking their Claims Information.

                        Respectfully submitted:

                        */s/ Daniel B. Stanton*
                        Charles R. Talley (#12634)
                        Daniel B. Stanton (#35337)
                        **KEAN MILLER LLP**
                        First Bank and Trust Tower
                        909 Poydras St., Suite 3600
                        New Orleans, LA 70112
                        Telephone:  (504) 585-3050
                        Facsimile:  (504) 585-3051
                        chuck.talley@keanmiller.com
                        daniel.stanton@keanmiller.com

                        **Attorneys for Wood Group PSN, Inc. and Corvan J. Robichaux**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 20th day of February, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to those who are non-CM/ECF participants.

*/s/ Daniel B. Stanton*
**DANIEL B. STANTON**
