UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: SWIFT ENERGY COMPANY, ET AL.

CIVIL ACTION

NO. 13-5552

SECTION "L" (2)

## ORDER & REASONS

Before the Court is Third Party Defendants' Wood Group PSN, Inc.'s ("Wood Group")
Motion for Summary Judgment on Corvan Robichaux's ("Robichaux") status as a borrowed
employee. (R. Doc. 242).  Having read the briefs, reviewed the applicable law, and heard the
parties on oral argument, the Court now issues this order and reasons.

## I.      BACKGROUND

On February 26, 2013, M/V SEA RAIDER ("SEA RAIDER"), owned by Swift Energy
Company and Swift Energy Operating, LLC ("Swift"), struck the Lake Washington Field CM
183 Well, also owned by Swift, causing an amount of oil and product to be released into the
inland coastal waters of Lake Washington Field. (R. Doc. 1 at 5).  On August 23, 2013, Swift
filed a complaint seeking exoneration from and/or limitation of liability.  (R. Doc. 1).  Since
then, Limitation Claimants ("Claimants") have alleged that the released oil and product caused
damages to the oysters, water, and water bottoms on and in the vicinity of their oyster leases.
(*See e.g.*, R. Docs. 11, 14).  At the time of the incident, the SEA RAIDER was being operated by
Robichaux, a captain employed by Wood Group and provided to Swift pursuant to the parties'
Master Service Agreement.  Claimants named Wood Group, alleging it was the manager and
operator of the SEA RAIDER and employer of its captain, and Robichaux, the captain of the
SEA RAIDER, as Third-Party Defendants. (R. Docs. 127, 154).

## II.     ANALYSIS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In this analysis, the Court must view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *See Crescent Towing & Salvage Co. v. M/V ANAX,* 40 F.3d 741, 743 (5th Cir.1994). Once the moving party demonstrates that there is no issue of material fact, the burden shifts to the nonmoving party to prove that there is an issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not depend solely on denials contained in the pleadings, but must submit specific facts. *See* Fed.R.Civ.P. 56(e). If the factual context makes the nonmoving party's claims implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show an issue of material fact. *See Matsushita,* 475 U.S. at 587.

The "borrowed servant" doctrine espouses the theory that "[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." *Total Marine Servs., Inc. v. Director, OWCP,* 87 F.3d 774, 777 (5th Cir.1996) (quoting *Standard Oil Co. v. Anderson,* 212 U.S. 215, 220, 29 S.Ct. 252, 53 L.Ed. 480 (1909)). In *Standard Oil,* the Supreme Court ruled that an employer is liable under the "borrowed servant" doctrine for the negligence of another's employee whom the employer has "borrowed." The Fifth Circuit has established nine factors to be considered when determining borrowed employee status.  *Ruiz v. Shell Oil Co.*, 413 F.2d 310,

312-13 (5th Cir. 1969); *see also Melancon v. Amoco Prod. Co.,* 834 F.2d 1238, 1244, *modified,* 841 F.2d 572 (5th Cir.1988); *Gaudet v. Exxon Corp.,* 562 F.2d 351, 355 (5th Cir.1977). The factors for evaluation include: (1) who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation; (2) whose work is being performed; (3) was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer; (4) did the employee acquiesce in the new work situation; (5) did the original employer terminate his relationship with the employee; (6) who furnished the tools and place for performance; (7) was the new employment over a considerable length of time; (8) who had the right to discharge the employee; and (9) who had the obligation to pay the employee?

No single factor is controlling, although the Fifth Circuit recognized in *Brown v. Union Oil Co. of California,* 984 F.2d 674 (5th Cir.1993) that the first element, control, has often been the primary focus. *See id.* at 676.  The court noted, however, that "in *Gaudet v. Exxon Corp.,* this court deemphasized the control factor and stressed the importance of the fourth, fifth, sixth, and seventh factors." *Id.* at n. 2 (citation omitted). In the present case, Wood Group argues that all nine factors dictate a finding that Robichaux fits the borrowed employee designation. Swift disagrees with this assessment. Swift essentially concedes the fourth, sixth and seventh factors, admitting that Robichaux was aware of and acquiesced to his employment arrangement with Swift, Robichaux's place of performance, the SEA RAIDER, and the tools he used for his work were provided by Swift, and that the relationship lasted for more than six years. Swift insists that all other factors weigh in its favor and preclude a finding of borrowed employee status. After reviewing the material facts, none of which appear in dispute, the Court concludes that summary judgment is appropriate and that the factors predominate in favor of placing Robichaux within

3

the scope of the "borrowed servant" doctrine. Since the Court finds that there is essentially no dispute as to the fourth, sixth and seventh elements, it will not address them in its review of this matter.

### a.  Factor Number One - Control Over Employee

Swift insists that its control did not rise above "mere suggestion as to details or the necessary cooperation." *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222 (1909). However, the depositions of Robichaux and James Saintes ("Saintes"), his Wood Group Supervisor, demonstrate that  Robichaux's work was performed at the direction and under the supervision of Swift's field foreman and field supervisor.  Dep. of Robichaux, 12:20-14:1.  Swift's field foreman directed Robichaux's daily work. *Id.*  Robichaux's schedule was determined by Swift. *Id.* at 15:4-19.  Swift had the authority to discipline Robichaux. *Id.* at 16:4-18:1.  Although Robichaux did not receive daily instructions from Swift, he did not receive any regular instruction from Wood Group either. *Id.* at 49:9-15; 155:10-157:16.  In fact, Saintes, only spoke to Robichaux approximately once every six months.  Dep. of Saintes, 81:20-25; 82:10-22.  The foregoing indicates that Swift exercised significant control over Robichaux during the six years he worked on Swift's vessel and the direction Robichaux received from Swift regarding who and what to transport and where to go went well beyond mere suggestion.

### b.  Factor Number 2 - Work Being Performed

Swift contends that it is in the business of drilling wells in search of oil and gas and not in the business of transporting workers from one location to another; thus, Swift argues that Robichaux was performing Wood Group's work for Swift as a contract captain.  However, as noted by Wood Group, this argument fails to recognize the fact that Swift's business requires human labor in remote places.  As a necessary part of its business, Swift must transport workers

to the drilling locations.  Robichaux was completing the work of Swift by operating Swift's

vessel and transporting Swift employees and other contract laborers to and from Swift facilities

in support of Swift's oil and gas exploration and production on Swift's leases.  Further, Wood

Group has no ownership interest in the field in which Robichaux works.  Consequently, this

factor weighs in Wood Group's favor.

### c. Factor Number 3 - Agreement Between Original and Borrowing Employer

Swift contends that the Master Services Agreement between Wood Group and Swift

clearly designates Robichaux as an independent contractor.  Under the Agreement, Wood Group

agreed to the following terms and conditions:

> CONTRACTOR shall perform its obligations hereunder as an independent
> contractor in accordance with generally accepted standards applicable
> thereto.  In this regard, neither CONTRACTOR nor anyone employed by
> CONTRACTOR shall be deemed for any purpose to be the employee,
> agent, servant or representative of COMPANY in the performance of any
> work or service hereunder.  COMPANY shall have no power or authority
> to direct, supervise or control CONTRACTOR's employees, servants,
> agents or representatives, nor those of its subcontractor(s), with respect to
> the means, manner or method of performance of the work or services
> performed hereunder.

By definition this should preclude a finding that Robichaux was a borrowed employee. However,

"[t]he parties' actions in carrying out the contract can impliedly modify or waive the express

provision." *Brown,* 984 F.2d at 678.  The consistent interaction between Robichaux and his Swift

supervisors (coupled with the absence of interaction between Robichaux and Wood Group)

evinces an understanding that Swift would exercise significant supervisory authority over

Robichaux's activities. Despite the boilerplate language of the contract, Swift acquiesced in an

implied modification by directing Robichaux's activities in its field for more than six years. *See*

*Wells v. Shell Oil Co.*, No. CIV. A. 97-2283, 1998 WL 872507, at *3 (E.D. La. Dec. 15,

1998)(holding that "[d]espite the boilerplate language of the contract, Wells acquiesced in an implied modification by taking directions from Shell").

### d.  Factor Number 5 - Termination of Original Employer Relationship

Robichaux always maintained his relationship with Wood Group, and Wood Group never terminated its relationship with Robichaux.  However, a finding that this element weighs in Wood Group's favor does not require that it completely sever its relationship with Robichaux. Indeed, "[s]uch a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers." *Capps v. N.L. Baroid–N.L. Indus., Inc.,* 784 F.2d 615, 617–18 (5th. Cir.1986). While Wood Group did maintain a relationship with Robichaux, it clearly deferred to Swift's wishes in the realm of daily operations.  Robichaux's work was directed by Swift and his contact with Wood Group was minimal and infrequent.  Robichaux only talked to Saintes about his vacation or benefits and not about the requirements of his daily work.

In *Spinks v. Chevron Oil Co.*, the Fifth Circuit held that a labor contractor which hired and paid a seaman was the seaman's Jones Act employer even if the seaman was a borrowed servant of a barge owner.  507 F.2d 216 (5th Cir. 1975).  The Fifth Circuit reasoned that simply because an employee is a borrowed servant of one employer does not mean that he ceases to be his immediate employer's servant.  *Id.* at 224.  However, the facts of *Spinks* are distinguishable from the facts in the instant matter.  In *Spinks*, the seaman's on-site supervisor, who was directly responsible for supervising the seaman in his daily activities (including on the date of the incident giving rise to the suit), was also employed by the immediate employer.  This is unlike here where Robichaux's immediate on-site supervisor was employed by Swift.  Here, Saintes, Robichaux's Wood Group Supervisor, only spoke to Robichaux approximately once every six

months.  Dep. of Saintes, 81:20-25; 82:10-22.  Further, Robichaux had been employed by Wood Group for over six years, all of which time he worked under the direction of Swift on Swift's vessels in Swift's fields. *Cf. Spinks*, 507 F.2d at 220 (where the employee worked with the borrowed employer for only eight months).

### e.  Factor Number 8 - Right to Discharge Employee

It is undisputed that Wood Group had the right to discharge Robichaux.  However, if dissatisfied with his performance, Swift would undoubtedly have the right to have Robichaux removed and replaced.  This factor is thus either neutral, or, viewing the facts in the light most favorable to Swift, tips in Swift's favor.

### f.  Factor Number 9 - Obligation to Pay Employee

Wood Group concedes that it distributed Robichaux's wages, vacation pay, and benefits.  However, Robichaux testified that he kept track of his hours worked, then submitted them to Swift for review and approval before forwarding them to Wood Group. *See* Dep. of Robichaux, 22:4-20. In short, Robichaux's pay depended upon the number of hours he worked for Swift, and this figure required Swift's approval before Wood Group could calculate any amounts due.  This arrangement supports a finding a borrowed employee status.  *See Crawford v. BP Corp. N. Am. Inc.*, No. 13-445, 2015 WL 1190123, at *4 (E.D. La. Mar. 13, 2015); *see also Wells v. Shell Oil Co.*, No. CIV. A. 97-2283, 1998 WL 872507, at *4 (E.D. La. Dec. 15, 1998).

## III.  CONCLUSION

On balance, then, this Court concludes that the facts predominate in favor of finding that Robichaux was a borrowed employee of Swift.  Thus, **IT IS HEREBY ORDERED** that Wood Group's Motion for Summary Judgment (R. Doc. 242) finding that Robichaux is the borrowed employee of Swift is **GRANTED**.

7

Additionally, the parties indicated that they had resolved the pending Motions to Compel (R. Doc. 287) and to Quash (R. Doc. 286).  Accordingly, **IT IS ORDERED** that these motions are **DENIED AS MOOT**.  The parties retain the right to re-urge these motions should such become necessary.

New Orleans, Louisiana, this 21st day of August, 2015.

UNITED STATES DISTRICT JUDGE